Good morning everyone. It's a beautiful day outside. Before we actually begin to hear arguments, there are a couple acknowledgments I'd like to make this morning. First, Judge Collins and I would like to acknowledge and thank Judge Cho Groves, who's sitting with us on assignment from the Court of International Trade in New York City. She's been with us for three days this week, and we're very appreciative of her time and effort to come out and help us out. So thank you, Judge. Thank you. Happy to be here. And I would also like to acknowledge my new colleague, Dan Collins. This happens to be the very first time that he's sitting as a Ninth Circuit judge. He was recently appointed and confirmed by President Trump not too long ago, and so we're welcome. I'm very pleased to welcome my new colleague, Dan Collins. With that, we're going to hear argument. So I'm going to call the cases as they appear on calendar. The first case is Singh v. Barr, and that's been submitted on the briefs. The next case is Galaza v. Johnson. Counsel. Good morning, Your Honors. May it please the Court. Dr. Jenny Foley, on behalf of the plaintiff appellant, Anna Galaza, I would like to reserve three minutes for rebuttal. Sure. The clock is counting down. I see that. I'll try and keep you. I'll keep an eye on it, Your Honor. Thank you. Your Honors, this case is about the right of disabled TSA employees to equal protection. As a preliminary matter, the Court asked us to examine jurisdiction under American States v. Daystar and James v. Price. Your Honors, those cases deal with manipulation of appellate jurisdiction. There is no manipulation here. The district court's order dismissing the rehabilitation claims was final. It was with prejudice. And all remaining claims have been dismissed. So it was dismissed under 41, Rule 41-1? Is that what it was? Voluntary dismissal. Is that what you did? The remaining claims were dismissed voluntarily. Was there ever a final judgment or order entered? No, Your Honor. Those claims were dismissed, so there was no final judgment in that regard. So what's the appeal from? It is from the dismissal with prejudice from the rehabilitation act. But what's the court document? What did the court do to do? Did the court enter an order of dismissal? Because I noticed in the notice of appeal there was only a notice of appeal from a minute order. Your Honor, there was no additional order provided by Judge Boulware. Why didn't you submit an order for the court to dismiss? Because Judge Boulware indicated during the oral argument that the minutes of the proceeding would constitute his order, Your Honor. Constitute his explanation for granting summary judgment and dismissing several It was on a motion to dismiss, Your Honor. And, yes, that was what Judge Boulware indicated. Before you dismissed the remaining claims without prejudice, were there any discussions with opposing counsel about the status of those claims after this appeal? Your Honor, I wasn't personally involved in the case at that point, but I do understand that my co-counsel, Mr. Trenchak, did have some discussion about dismissing the remaining race and gender claims with the AG's office. However, at the time the dismissal was finished and done, she was on vacation. So the claims were dismissed without prejudice. I also believe, however, Your Honor, pursuant to American States and James v. Price, those claims would at this point long be time-barred. And even if by some miracle we were able to revive those claims with some kind of relation-backed argument, this is a case that would be kind of textbook for a latches doctrine argument by the AG's office. And I believe that that would be persuasive. There is no effective way that these claims can be revived. There is no agreement. There's no tolling agreement governing those claims. That is correct, Your Honor. There is no agreement. These claims were dismissed voluntarily without prejudice, to some extent without input from the opposing side, although there were, from what I understand, some e-mails that had gone back and forth. And so you're saying effectively now it's tantamount to a dismissal with prejudice. Those claims are essentially dead at this point. We believe they are dead, Your Honor. Is there any intention to try to refile those claims at some point in the future? No, Your Honor. As a candid matter, we believe that we won't be able to get over the exhaustion question. I suppose in some alternate universe, if some magic thing happened, maybe, but there is no intent at this time, and nor has there been since the time they were dismissed. We didn't have intent to rebring them. But the cases do suggest that you also should have some participation of the district court in the process. And if you had submitted some kind of paper, something to get the court to sort of wrap this up, that would seem to satisfy the cases more clearly, don't you agree? It might have satisfied the cases more clearly, Your Honors. But we do believe that the voluntary dismissal, especially given the time that it's elapsed since Ms. Galaz's termination, makes these cases dead in the water. We do believe that this matter is ripe for appeal. We do believe that this Court does have jurisdiction. Why didn't you just dismiss with prejudice at the time? Your Honor, I can't speak to that. My co-counsel was involved at that time. I don't know the answer to that. My understanding, however, is that he was nearly certain that the exhaustion issue was not going to make the claims viable. And I think he might have been trying to leave open the possibility that additional EEOC documents, which I think he thought were forthcoming, would be then forthcoming and then if that had happened. We do, however, have all of the EEOC documents pertaining to this case. However, we still believe that this case is — those remaining claims are dead, Your Honor, and we don't believe there's any way to revive them. And we have no intention of doing so. But what you just said, I believe, in terms of the timing, was after the notice of appeal had been filed in this case already. I believe it had been, Your Honor. So you're saying that there was, at the time of filing without prejudice, some possibility perhaps in the mind of counsel that the claims would have been revived. I think there might have been hope as opposed to any — any belief that there was an actual possibility. Why don't you — why don't you turn to the merits? You've only got five minutes left. Understood, Your Honor. Congress never intended to exempt the TSA from the Rehabilitation Act as evidenced by the plain language of the statute. Congress's own words indicate in the statute that the varying physical requirements for the differing types of screeners do not have to be met without accommodation. Had Congress indicated that the requirements needed to be met without accommodation or all screeners had to meet all physical standards at all times, something along those lines, candidly, we wouldn't be here. With or without any additional input from the legislature in 2017, the Court's ruling here down below that the notwithstanding language preempts the ATSA from the Rehabilitation Act flies in the face of two Federal statutes protecting the rights of disabled employees, one of which is nearly a half a century old, specifically protecting the rights of disabled Federal employees. The district court erred as a matter of law when it dismissed those claims without prejudice. As a matter of procedure, under a 12b-6 motion, the district court should have permitted the plaintiff at least to amend the complaint and allege any additional facts that would have potentially arisen in order to save the claim. The district court did not read the plain language of the ATSA correctly. Congress intended that the Rehabilitation Act apply because it did not say that those standards had to be met. So how do you respond to the argument that they're not even an argument, that there are several other circuits that have rejected your argument? Your Honor, we believe that those are also based on an improper reading of the statute, and each of those claims is distinguishable from our claim here. Each of those claims involved either a failure to hire, which the citations provided by the TSA directly address hiring standards. Those were failure-to-hire cases, so they might fall under those claims. As a secondary matter, in many of the claims, the appellant or the plaintiff themselves failed to participate in the interactive process. And simply by failing to let, for example, the TSA know what their disability was, they would have been properly terminated at that point. More importantly, Your Honor, I believe that if you look at the case law as a whole, it evidences an intent by the TSA, a de facto following of the Rehabilitation Act. How do you get around notwithstanding any other provision of law? Your Honor. Do you have the clearest language to sort of set aside other potentially applicable obligations and say, now I'm going to define what applies here? Your Honor, I believe that in this instance, this statute has to be interpreted in harmony with existing statutes where possible, and that is absolutely possible. It is — there is no reason for that notwithstanding language to indicate that Congress intended the ATSA or the TSA agency to be exempt from the Rehabilitation Act. You can read these statutes to be in harmony with one another, and that's evidenced by the fact that there are differing physical standards outlined for the various types of screeners within the statute itself. Did you want to save some time for everybody? I do, Your Honor. Thank you. Okay. Thank you. May it please the Court, Holly Vance on behalf of the government. Good morning, Your Honors. First of all, Your Honor, I want to say that I do agree with Dr. Foley's statement that there has been no manufacturing of jurisdiction, no manipulation of jurisdiction in this case. The parties never engaged in, for example, a side agreement to toll the statute of limitations. However, in reviewing the case law cited by the Court and the record, the government's position is jurisdiction is lacking for reasons unrelated to manipulation. First, Ms. Galatza's notice of voluntary dismissal was made pursuant to 41A1AI. Now, if you look at that provision, it plainly and clearly states that a party may dismiss an action without court order before an answer or summary judgment motion is filed. It doesn't say you can dismiss part of your claim. So I think that's the first flaw depriving this court of jurisdiction is we have a flawed voluntary dismissal. Are you saying that the claims were not properly dismissed and therefore weren't dismissed? Correct, Your Honor. They're still pending in the district court? Well, that would be my position. Well, there's no order. There's no order. And that's not the only reason, Your Honor. If I can get to my second point, I think American States and James teach us that a party should not be able to convert a non-appealable order into an appealable order without meaningful court participation. So the government's position here is that did not occur. I think it was required under James and American States. So that lack of government or, excuse me, district court participation along with the flawed notice of voluntary dismissal renders that dismissal ineffective. And the denial of the motion for reconsideration was never made final. But counsel basically has just said to us that we should deem that dismissal without prejudice of the remaining claims to be a dismissal with prejudice. Should we accept that and find jurisdiction on that basis? Or can we do that? No, I would still take the same position that the rules are in place for a reason, Your Honor, and Rule 41A1AI was not followed. And also, I think the more critical point is that there was no meaningful participation by the district court in that dismissal to render the denial of the final order. There's a question in my mind whether there's a final order, because this was only the appeal was from a minute order. I've never seen such a thing. Well, Your Honor, you are on point with that. That leads me to my third point, which is no judgment has ever issued. That is another. Let me ask you, on the first point when you're talking about Rule 41, why, as I understand what happened in the first complaint, the district court judge dismissed this Rehabilitation Act claim with prejudice, relying on out-of-circuit law. Correct. Right? Correct. So that only left these other claims, right, the three remaining claims? He gave her leave to amend? Correct. Correct. And then the dismissal was to specifically list these three claims. Correct? So why isn't that tantamount to a dismissal of the action? Because the first claim is dismissed with prejudice by the court, and then these other three claims are then dismissed. So there's nothing left. Well, I think we need a judgment here, Your Honor. I thought that when I sat down and took a look at this and I looked for the judgment or for an order by the court or something, there's nothing here. And I think it's particularly problematic in this case because we don't have any written orders here, Your Honor. So you actually have to paw through the record to try to figure out what claim has been dismissed, what claim has not been. But if they have dismissed the remaining claims without prejudice, I mean with prejudice rather than without prejudice, then the action is over. There are no pending claims, and that adverse decision is then a final decision, which is the 1291 language. It doesn't say judgment. It says final decision. Why wouldn't then that be appealable? Well, because there is one final problem with the record, Your Honor. Ms. Galatza had expressed an interest in dismissing her retaliation claim in opposing the government's motion to dismiss the amended complaint. And in preparing for our argument, I read the judge's transcript on that, and the judge doesn't address that claim. The judge addresses gender and race and says I'm going to give you 60 days to conduct discovery on the exhaustion issue. But there's no mention of the retaliation claim. So my point is it's another example of some loose ends that need to be tied up with a judgment. And so why didn't you raise this jurisdiction issue in your briefing? Your Honor, I apologize to the Court and your staff. I did not catch these issues until I got your directive asking us to look into jurisdiction. So I looked into it, and this is what I've come up with. And so I apologize for not catching it earlier. I wish I had moved to dismiss for lack of jurisdiction. The retaliation claim wasn't separately dismissed? I don't see it in there, Your Honor. So, you know, you can't dismiss it within the context of your opposition to a motion to dismiss. We need a court order saying, yes, it's gone, it's dismissed, and I don't see it on this record. So that's another problem. And I come back to probably, I mean, I think the two most glaring things related to jurisdiction are, number one, no issuance of a judgment. And where you have no written court orders, it cries out for a judgment to provide clarity, finality, closure to this case. And I think it's required by Rule 58, so that's another. You know, you're right. When I looked at the notice of appeal or notice of dismissal, you're right. It does say notice of dismissal of race and gender claims without prejudice. It doesn't mention the retaliation claim. Correct. So that's another problem. Are you sure? I seem to recall that there was some place in the record where she said that that claim was going to be abandoned. Am I mistaken on that? Well, Ms. Galatza made a statement to that effect in her opposition brief. But I don't see that the judge picked up on it at the hearing in giving its oral ruling, Your Honor. And I don't see it in the minutes. So she did state on the record that the claim was being abandoned, but then just didn't paper that? Is that the idea? Right. And again, the case needs a judgment to tie up all these loose ends, and I don't think this Court has jurisdiction until that occurs. If we find there's no jurisdiction because of these defects, do you agree that it can go back to the district court, it can sort all this out, enter the appropriate judgment, and then it can come back up? Yes, Your Honor. I would take the position that this Court lacks jurisdiction and should dismiss the case for lack of jurisdiction. And then Dr. Foley can take whatever action she deems is appropriate to bring it to the district court's attention to do whatever needs to be done to finalize it. And yes, it should be able to come back up then. Okay. Okay. Why don't you turn to the merits for the little – I'll give you a couple extra minutes to address the merits. Thank you, Your Honor. On the merits, Your Honor, Congress has taken action to make air travel safer. That's what this case is about. And toward that end, toward that goal, the ATSA requires screeners to meet certain requirements in the interest of national security. And those are laid out very specifically and clearly in the statute. Notwithstanding any other provision of law, an individual may not be deployed as a screener unless he or she meets various conditions which are laid out. Couldn't be more clear, Your Honor. And that's why we have six circuits agree with our position here. I can't find one district court case that disagrees with our position. I'm sorry, Judge. Let me ask you, is it the government's position that every possible disability claim that a TSA agent could file is preempted? Or not preempted, but, you know, is gone? Well, yes, Your Honor. Gone. Yes. Now, keep in mind, these security screeners are free to apply for other positions within TSA. It's not as if TSA is going to cut them loose and they're going to be unemployed. They are welcome to apply for other positions with TSA. And I'm sorry, Your Honor, did you have a question? Is it your position based, you know, you're relying on the breadth of the phrase notwithstanding any other provision of law. Does that get the TSA out of every anti-discrimination statute on the books? Is that your position? That is not my position, Your Honor. I know that they made that point in their brief. Here is my response. If you take a look at the language of 49 U.S.C. 44935F1, it is very narrow and it is very specific. And it ties the administrator's tasks or duties or obligations to set up conditions for physical conditions for screeners. So there's no comparable provision here that would allow the administrator to discriminate based on religion or to impose conditions based on religion, gender, race. It's very narrow in scope. So you don't think that notwithstanding any other provision of law waives those statutes, but it does waive the Rehabilitation Act? No. Well, if you read the statute, the notwithstanding any other provision of law is a precursor to a very narrow set of circumstances. The screeners must be able to adhere to the following physical requirements. So it's narrow in scope. It is not going to lead to carte blanche discrimination by the administrator on disability grounds or race, gender, religion. I mean, that's simply not in the provision. So I think that counsel's argument is not well taken there, Your Honor, because there's nothing in that provision to support that argument. That would be the government's position. And another point I would make, Your Honor, we'd be happy to get you supplemental briefing on this, but there have been carve-outs made for military personnel, again, because these national interests have been deemed paramount. And so you'll see this in other contexts. This is not something they're pulling out of the blue. This is something that has been found in other statutes as well. And I have no more time, Your Honor, so unless you have questions, I'm going to end it. Thank you. Thank you. Thank you, counsel. Thank you. We appreciate your argument. You had two minutes for rebuttal. Two. Thank you, Your Honor. Your Honor, a simple analysis of the plain language of the statute shows that Section F is only referenced in Section E, which pertains strictly to hiring. So the fact that Ms. Galazza was, in fact, already hired presents a unique issue that has not been raised in any of the case law below. As a practical matter, the TSA essentially admits that it's already following the Rehabilitation Act. Of course, notwithstanding doesn't mean that you can exempt people on their race, their religion, their gender, or on the basis of their disability. You could, in fact, make an argument, if they wanted to, under this broad interpretation, that African Americans need to be given a special preference, because historically they've been stereotypically regarded as being stronger and more capable of following orders. That would be absurd, just as this result is absurd. The TSA is already essentially following these provisions, Your Honors, and they should be made to acknowledge that the ATSA does not preempt the Rehabilitation Act. Let me ask you this. Is your retaliation claim still alive in the district court? It is not, Your Honor. My understanding is that it was dismissed. Well, it wasn't dismissed. My understanding is that it was — that there was a statement made during one of the hearings that dismissed that claim with prejudice. When was the First Amendment complaint filed? I believe it was filed in January of 2017, Your Honor. Was that after the hearing before the hearing? It was. And it still contains the retaliation claim? The — there was a second hearing, Your Honor, in the motion. After the filing of the First Amendment complaint? There was, Your Honor, on the motion for reconsideration. It's my understanding that that claim was dismissed with prejudice at that point. There are no remaining claims here, Your Honor. Was there any — was there any written statement to that effect? No, Your Honor. Judge Bullwher has not mentioned it. So the only thing we have, the only written representation by counsel is the voluntary dismissal of the 41A1. That is correct, Your Honor. And of the — of the sex and race discrimination claim. Your Honor, yes. 41A1 says you may dismiss an entire action, but that's essentially what happened  Well, it's unclear what happened to the retaliation claim. My understanding, Your Honor, and my position here and my representation to the Court is, is that the retaliation claim was dismissed during the hearing on the motion for reconsideration. That was dead in the water before that voluntary dismissal ever came about. Okay. All right. Thank you.  The matter is submitted. Thank you, counsel. We appreciate your arguments this morning.
judges: Paez, Collins, Choe-Groves